## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

BENJAMIN GOLDSMITH, on behalf of himself and
all others similarly situated,

PLAINTIFF,

- AGAINST -

SYRACUSE UNIVERSITY,

DEFENDANT.

Case No.   5:23-cv-1582 (TJM/TWD)

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Benjamin Goldsmith ("Plaintiff"), by and through the undersigned counsel, brings this class action against Defendant Syracuse University ("SU," the "University," or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to him, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      Higher education is no different from any other industry in as much as consumers (i.e., students) have the ability to shop between different educational products offered by competitive institutions before ultimately purchasing the product that is right for them.

2.      Some colleges and universities offer an educational product without access to a campus or in-person community, while others offer an educational product with access to a varied suite of services, activities, facilities and experiences.

3.      Syracuse University offers both an on-campus product and an online product,

1

which it markets, governs, and prices as distinct commodities.[1]

4.      Mr. Goldsmith, a SU student, paid tuition and fees to enroll in SU's on-campus program, including all the benefits and services associated therewith, until mid-way through the spring of 2020, when that experience was taken away from Plaintiff and other students at SU.

5.      Plaintiff Goldsmith formed his expectations during his recruitment, application, admission, acceptance, enrollment, registration, and payment processes – as well as past performance – and through representations from Syracuse about the nature of the services they have and would provide.

6.      In March 2020, in response to the outbreak of the SARS-CoV-2 virus, the virus that causes the COVID-19 disease (the "COVID-19 pandemic"), SU, like many other universities, transitioned to remote online-only instruction, canceled athletic and other on-campus recreational events, canceled student activity events, and ordered students to refrain from going on campus.[2]

7.      As a result, all on-campus education, services, and amenities were no longer available to SU students.

8.      Despite the harsh reality that students could no longer enjoy the benefit of the bargain for which they pre-paid, SU refused to provide a pro-rated refund of tuition or fees tied to on-campus education, services, and amenities that were not available to students for a significant part of the Spring 2020 semester.[3]

9.      Accordingly, the students have lost the benefits of the bargain for services and the experience they reasonably expected and paid for but could no longer access or use.

---

[1] SU has two separate websites: one for online: Online Graduate Programs | Syracuse University Online and one for traditional on-campus in-person students: Syracuse University - Syracuse.edu.
[2] Syracuse University will shift classes online due to coronavirus concerns - syracuse.com; Important Coronavirus Message from Chancellor Syverud | Syracuse University News
[3] See List of schools who Offered Refunds in Fall 2020 (Universities throughout the country have offered their students, in response to COVID-19, refunds, discounts, or tuition freezes to combat the financial burden imposed on their students in later semesters)

10.    By not giving prorated refunds for tuition or fees charged for on-campus education and services not provided, SU breached its contracts with students.

11.    It cannot be disputed that the circumstances underlying this legal action are unfortunate and unprecedented. However, the students did not choose these circumstances, and they certainly did not agree to pay tuition and fees for online-only education and services. Further, students like Plaintiff Goldsmith never agreed to shoulder the financial burden of the pandemic in the event that Syracuse was unable to provide the ordinary, usual, expected, and contracted for services.

12.    It is unfair and unlawful for SU to retain tuition and fees for campus-based in-person education and services not being provided and to pass the losses on to the students.

13.    Importantly, Plaintiff does not challenge Defendant's discretion in adhering to federal, state, and local health guidelines, but rather challenges Defendant's decision to retain the tuition and fees, paid by Plaintiff and other students for in-person education, experiences, access to campus, and services, without providing such.

14.    Mr. Goldsmith brings this class action for damages, restitution, and declaratory relief resulting from SU's retention of the tuition and fees paid by Mr. Goldsmith and the other putative Class Members for in-person education and services not being provided. Specifically, this lawsuit seeks disgorgement of the prorated, unused amounts of the fees that Mr. Goldsmith and other putative Class Members paid, but for which they (or the students on behalf of whom they paid) were not provided the benefit, as well as a partial pro-rated tuition reimbursement representing the difference in fair market value between the on-campus product for which they had paid, and the online product that they received.

15.    Plaintiff Goldsmith also seeks, in the alternative to his contract claims, an equitable

return of tuition and fees that he pre-paid in advance of the Spring 2020 semester that resulted in Syracuse being unjust enriched as a result of actions they took during the pandemic or benefits they unjust received. Under principles of equity in New York law, Syracuse should not benefit to the detriment of its students.

## PARTIES

16.     Plaintiff Goldsmith is a citizen of New York who resides in Syracuse, New York. He paid full tuition and fees for the Spring 2020 semester. Halfway through the Spring Semester, Mr. Goldsmith was forced to take his classes remotely, refrain from visiting campus, and prevented from utilizing various on-campus services for which he paid.

17.     Mr. Goldsmith enrolled at SU for the Spring 2020 semester, which was scheduled to run from approximately January 13, 2020, through May 11, 2020. Mr. Goldsmith did not have access to campus after March 10, 2020, because the university closed for spring break, and after that, the campus was closed due to COVID-19. Mr. Goldsmith paid tuition and fees for the Spring 2020 semester, the benefits of which he lost because SU closed the campus and cut off access to on-campus services, facilities, and extra-curricular activities.

18.     Defendant Syracuse University is a private research university, founded in 1813, with campuses located in Syracuse, New York, and its principal place of business at 900 South Crouse Ave. Syracuse, NY 13244.

## JURISDICTION AND VENUE

19.     This Court has personal jurisdiction over Defendant because it operates a business in Onondaga County and is the proper venue for this action because Defendant resides in this County and is a citizen of New York.

## FACTUAL ALLEGATIONS

20.    Every SU student, including Plaintiff, is required to pay tuition and some form of mandatory fees. The Spring 2020 semester was scheduled to commence on January 13, 2020, and end on May 7, 2020.[4]

21.    Tuition for the Spring 2020 semester was approximately $26,105 for undergraduate students.[5]

22.    SU offers two separate and distinct product offerings – in-person and on-campus education, and online only degrees and certificates. SU markets these products separately, and students can choose which product they prefer.

23.    For example, Syracuse used its website to solicit students specifically for its on-campus programs, stating "[t]he best way to know if Syracuse is the right fit for you is to visit our gorgeous campus in the heart of New York State."[6]

24.    SU touted the campus, facilities, and more to prospective students: "[v]iew the beautiful, iconic campus in any season, tour our state-of-the-art facilities, and gain insight into the undergraduate experience. Plan your visit and get ready to make yourself at home."[7]

25.    SU sold prospective students on the idea of a communal campus: "[t]here are nearly 22,000 students from all over the world taking part in clubs, athletics and gatherings of all kinds, so you'll always have something to do and people around who share your interests. Pretty soon, Syracuse will start to feel like home. Our spirit and camaraderie are undeniable, and the reason why thousands of alumni return every year."[8]

26.    Plaintiff and members of the Class paid tuition for the benefit of on-campus live

---

[4] https://academicaffairs.syracuse.edu/wp-content/uploads/2019/06/academic-calendar-law.pdf
[5] https://www.syracuse.com/syracuse-university/2019/04/syracuse-university-increases-tuition-again-this-year.html#:~:text=The%20cost%20for%20the%20upcoming,over%20the%20next%20several%20years.
[6] https://web.archive.org/web/20190419203941/https://www.syracuse.edu/admissions/visit-tour/ (Apr. 19, 2019).
[7] Id.
[8] https://web.archive.org/web/20190419204036/https://www.syracuse.edu/life/ (Apr. 19, 2019).

interactive instruction and an on-campus educational experience throughout the entirety of the semester.

27.     Plaintiff and members of the class also are required to pay mandatory fees. These mandatory fees provide students access to a multitude of SU's on-campus facilities, resources, events, and services as evidenced by the language of many SU publications, including, but not limited to, the 2019-2020 Tuition and Fee bulletin, the Course Catalog, and SU.

28.     The SU's 2019-2020 Tuition and Fees Bulletin[9], lays out the Mandatory Fees a student could be required to pay. Such fees include:

    a)  Student Activity Fee: a mandatory fee for Main Campus and English Language Institute students that is collected by the University on behalf of such student governing bodies as Student Association, Graduate Student Organization, and Law Student Bar Association. This money is then allocated by the student governing bodies to a large number of campus organizations to support their activities and services.

    b)  Student Co-Curricular Fee: e is a mandatory fee for all undergraduates on the Main Campus that is collected by the University and allocated by the Division of Student Affairs. The fee supports such programs and services as recreational and outdoor education, PULSE, crime prevention and safety initiatives, and student leadership development initiatives

    c)  Health and Wellness Fee: s a mandatory fee that supports a comprehensive array of health and wellness services and programs for students provided by the Counseling Center, Health Promotion, Health Services and the Office of Student Assistance. Students can receive services and programs, including individual and group counseling, case management, crisis intervention, and primary and women's health care services, offered by these departments during the semester for which the fee was paid. Other covered health-related services include University ambulance services, medical transport services, flu shots, nutrition counseling, and short-term psychiatric assessment and intervention. The health and wellness fee also contributes to other health and wellness promotion programming focused on keeping students safe and healthy and enhancing their overall coping skills and social-emotional development

as well as any program specific fees.

---

[9] Syracuse University Tuition, Fees and Related Policies Bulletin 2019-2020

29.     Also included in the 2019-2020 Tuition and Fee bulletin is specific language that gives context to what these fees give students. For example, the bulletin states:

> "Each full-time, main campus student currently registered at one of the institutions indicated may purchase a season ticket for all the home football games."

> "Syracuse University students can enter any home women's basketball, women's lacrosse or men's lacrosse game free-of-charge by displaying their valid SU I.D. card at any open Carrier Dome entrance"

> "Syracuse University students can attend free-of-charge any home Syracuse University athletic contest that takes place at a campus venue other than the Carrier Dome by displaying their valid SU I.D. card at the time of entry"

> "There is no admittance charge to Syracuse University and ESF students with a currently valid SU I.D. card."

> "Individuals who are not Syracuse University students and faculty/staff, and SUNY College of Environmental Science and Forestry students are eligible to pay a membership fee to access recreational facilities."

30.     The Course Catalog[10] states:

> "The Learning Commons in Bird Library offers 24-hour access, technology usage and assistance, and research help in a single location."

> "The Libraries are equipped with wireless access, laptops and other equipment for loan, and provide a variety of study spaces, including group and individual study rooms, classroom and meeting spaces, technology-equipped study rooms, and designated quiet study spaces. Library workstations, including Macs and PCs, are equipped with standard campus software applications, specialized software for multimedia production, GIS, and adaptive technologies for disabled users. In addition to physical resources, the Libraries provides a variety of services to students, including instruction, liaison work, interlibrary loan, inclusion and accessibility services, reference answers, and reserves."

> "The school <u>will not</u>:  Deny the student access to any resources available to other students who have satisfied their tuition and fee bills to the institution, including but not limited to access to classes, libraries, or other institutional facilities."

31.     SU's websites state:

---

[10] General Information - Syracuse University - Acalog ACMS™

"With the opening of the Barnes Center at The Arch, a state-of-the-art health, wellness and recreation complex, Syracuse University and SUNY College of Environmental Science and Forestry (ESF) campus community members have access to upgraded, modern and enhanced features and services in the recreation portion of the building. Memberships for use of the recreation portion of the Barnes Center at The Arch remain free for Syracuse University students, faculty, emeritus faculty and staff, as well as ESF students."[11]

"Health Care: Regardless of health insurance, Syracuse University students are welcome at the Barnes Center. Office visits are not billed and are covered by the Health and Wellness fee for full-time matriculated students"[12]

"Counseling: Counseling visits with our team of therapists continue to be covered in full through the Health and Wellness Fee."[13]

"Psychiatry: Counseling visits with our team of therapists continue to be covered in full through the Health and Wellness Fee. This includes visits for individual and group therapy."[14]

"The following resources are available at no additional cost for students" Crowley Family MindSpa; Peer Educators; Pet Therapy; Safer Sex Express; Sanvello; Soul Series; Wellness First Aid Kits (Cold/Flu, Sleep, Stress)"[15]

"We strive to provide opportunities for students to discover and engage their strengths, talents and passions through a fun and diverse environment; we empower students to put their learning into action on campus and in the community."[16]

"Student Activities produce Orange Pride events such as Homecoming, Winter Carnival, National Orange Day and Senior Celebration. We also coordinate Orange After Dark, the Women's Leadership Insitute (WLI) and BOLD (Building Organizational Leadership Development."[17]

32.     It is clear from this language that the payment of fees requires SU to provide its students access to its on-campus facilities, resources, and services, of which most if not all require campus and in-person access to be provide in the form that was promised.

---

[11] Billing and Fees – Barnes Center at The Arch – Syracuse University - Barnes Center at The Arch – Syracuse University
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] Mission & Values - Student Activities – Syracuse University
[17] Student Organizations - Student Activities – Syracuse University

33.    As stated above, SU shut down its campus and moved to a remote platform on March 10, 2020, where it remained for the rest of the Spring 2020 semester, meaning 50% of the Spring semester was spent off-campus with remote online only learning, and with little to no access to any of the facilities, services, or resources the fees charged to SU students covered and SU was to provide.

34.    For example, students no longer had access to the fitness centers[18] or libraries[19] during the shut-down. Services such as health and wellness centers[20] and the bookstores and grocery[21] were provided but in a limited capacity. Various events and access to facilities could not be provided in-person and on-campus as promised SU did provide some services virtually, however that is not what Plaintiff paid for or reasonably expected to receive.

A.    ***Students Are Experiencing Significant Losses, in Many Cases of Borrowed Funds as a Result of Defendant's Conduct***

35.    At SU, the median federal loan debt among borrowers who completed their undergraduate degree is $27,000.00.[22] The median monthly federal loan payment (if it were repaid over 10 years at 5.05% interest) for student federal loan borrowers who graduated from SU is $258.00.[23]

36.    In addition, 13% of graduating students at Syracuse University took out private loans.[24] Students with private loans had an average of $55,534 in private loan debt at graduation.[25]

---

[18] Coronavirus Update: State Order Will Require Dining Halls and Fitness Centers to Close at 8 p.m. Today | Syracuse University News
[19] Coronavirus Updates and Guidance 3.18.20 | Syracuse University News
[20] Additional Guidance on COVID-19 Planning and Response | Syracuse University News
[21] Coronavirus Update: Expanded Services, New Resources and Reminders 3.28.20 | Syracuse University News
[22] Syracuse University - Tuition and Financial Aid | US News Best Colleges
[23] *Id.*
[24] *Id.*
[25] *Id.*

37.     With the campus shut down for 50% of the semester, Plaintiff and the proposed Class Members have been deprived of the benefits of the on-campus experience as set forth above. Nevertheless, SU has refused to refund any portion of the tuition or Mandatory Fees, despite not providing the on-campus education, services, facilities, and activities, a completely different product from which they paid, contracted for, and reasonably expected to receive and which had been previously provided for over 150 years.

38.     Plaintiff and the proposed Class Members are entitled to a refund of the money they paid SU for promised on-campus education and experience when none was provided. Students could use that money to pay for expenses, to defray the costs of lost services, or, for students who took out loans, to reduce their loan obligations.

39.     SU has retained the value of the monies paid by Plaintiff and the proposed Class Members for tuition and the Mandatory Fees for the Spring 2020 semester while failing to provide the services for which those monies were paid.

40.     Through this lawsuit, Plaintiff seeks for himself and the other Class Members: (i) SU's disgorgement of the tuition and Mandatory Fees proportionate to the amount of time that remained in the Spring 2020 semester when the campus closed and corresponding campus services were curtailed or ceased being provided and Plaintiff seeks return of those amounts on behalf of himself and the Class Members as defined below.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff seeks to represent the following class:

> All Syracuse students who satisfied their payment obligations for the Spring Semester 2020 tuition and/or Mandatory Fees and enrolled in at least one in-person, on-campus class (the "Class").

10

42.     Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers.

43.     Subject to additional information obtained through further investigation and discovery, Plaintiff reserves the right to amend, narrow, or expand the class definitions.

**A.  Numerosity.**

44.     The Class members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Although the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discover, Plaintiff, upon information and belief, reasonably estimates there around 21,322 total students at SU.[26] Thus, there are likely thousands of Class members. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

**B.  Predominance and Commonality.**

45.     This action involves common questions of law and fact that will drive the litigation and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

       a.   Whether SU engaged in the conduct alleged herein;

---

[26] Facts, Figures and Rankings - Syracuse.edu

b.   Whether SU accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services throughout the Spring 2020 semester;

c.   Whether SU breached its contract with Plaintiff and the proposed Class by transitioning to remote online learning, shutting down its campus, and not providing students with the paid-for live in-person classes and on-campus experience;

d.   whether SU breached its contract with Plaintiff and the proposed Class by transitioning to remote online learning, shutting down its campus, rendering students unable to access most or all of the on-campus facilities and services for which they paid;

e.   Whether SU is unjustly enriched by retaining a portion of the tuition and Mandatory Fee during the period of time SU has been closed, and Plaintiff and the members of the Class have been denied an in-person and on-campus live education and access and the services and facilities for which the Mandatory Fee was paid.

C.  **Typicality.**

46.     Plaintiff's claims are typical of those of the other Class Members because Plaintiff and the Class Members each paid for certain costs associated with the Spring 2020 semester at SU but were not provided the services that those costs were meant to cover. Plaintiff and other Class Members suffered damages – the loss of their tuition and Mandatory Fees payments– as a direct and proximate result of the wrongful conduct in which SU engaged.

D.  **Adequacy of Representation.**

47.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation. Plaintiff and his counsel intend to vigorously prosecute this action for the benefit of the Class as a whole. Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel.

**E.   <u>Superiority.</u>**

48.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members is relatively small compared to the burden and expense that would be required to individually litigate their claims against SU, making it impracticable for Class Members to individually seek redress for SU's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

**<u>COUNT I</u>**
**Breach Of Contract as to Fees**
**(On Behalf Of Plaintiff and The Class)**

49.     Plaintiff hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

50.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

51.     Plaintiff and the other Class Members entered into contractual agreements with

13

Defendant, which provided Plaintiff and other Class Members would pay Mandatory Fees – and in exchange Defendant would provide facilities, activities, services, and resources to students.

52.     Defendant provided documents that specifically list the fees that would be assessed to students and detailed the nature of these fee charges.

53.     Such charges include:

a.     Student Activities Fee – "The student activity fee is a mandatory fee for Main Campus and English Language Institute students that is collected by the University on behalf of such student governing bodies as Student Association, Graduate Student Organizations, and Law Student Bar Associations. This money is then allocated by the student governing bodies to a large number of campus organizations to support their activities and services."[27]

b.     Student Co-Curricular Fee – "The student co-curricular fee is a mandatory fee for all undergraduates on the Main Campus that is collected by the University and allocated by the Division of Student Affairs. The fee supports such programs and services as recreational and outdoor education, PLUSE, crime prevention and safety initiatives, and student leadership development initiatives.[28]

c.     Health and Wellness Fee – "The health and wellness fee is a mandatory fee that supports a comprehensive array of health and wellness services and programs for students provides by the Counseling Center, Health Promotion, Health Services, and the Office of Student Assistance. Students can receive services and programs, including individual and group counseling, case management, crisis intervention,

---

[27]Syracuse university Tuition, Fee and related Policies Bulletin 2019-2020, pg. 7 - https://bfas.syr.edu/wp-content/uploads/2019/06/2019-2020-Tuition-and-fees-booklet.pdf (last accessed April 7, 2022).
[28] Id.

and primary and women's health care services, offered by these departments during the semester for which the fee was paid. Other covered health-related services include University ambulance services, medical transport services, flu shots, nutrition counseling, and short-term psychiatric assessment and intervention. The health and wellness fee also contributes to other health and wellness promotion programming focused on keeping students safe and healthy and enhancing their overall coping skills and social-emotional development."[29]

d.      NYPIRG Fee – "This fee is a contribution to the New York Public Interest Research Group, which engages in research in social, political, ecological, and environmental areas of interest to the general public. The fee is collected by the University in agreement with NYPIRG on a mandatory basis at the time of registration, but is refundable."[30]

e.      Various Course and program fees depending on majors and areas of studies.[31]

54.     Plaintiff and the other Class members have fulfilled their end of the bargain when they paid Defendant's fees for the Spring 2020 semester.

55.     Defendant breached its contract with Plaintiff and the other Class Members when it moved classes online, cancelled on-campus events and activities, closed campus, and stopped providing facilities, activities, services, and resources for which fees were paid, and refused to provide any refunds.

56.     In doing so, Defendant has and continues to deprive Plaintiff and the other Class

---

[29] Id.
[30] Id.
[31] Id at 6-10.

Members from the benefit of their bargains with Defendant associated with those specific fees.

57.     Even if performance is excused, Defendant cannot retain those Mandatory Fees for facilities, activities, services, and resources it did not provide for the remainder of the Spring 2020 Semester.

58.     By retaining all of the subject fees while not providing facilities, activities, services, and resources, throughout the Spring 2020 semester, Defendant has breached the implied duty of good faith and fair dealing embedded in its contractual agreements with Plaintiff and other Class Members.

59.     Defendant retained monies paid by and which belong to Plaintiff and the other Class Members, without providing them the benefit of their bargain.

60.     Plaintiff and the other Class Members have been damaged as a direct and proximate result of Defendant's breach.

61.     Plaintiff and the other Class Members are entitled to damages, including but not limited to Mandatory Fee refunds for services that were completely unavailable and partial refunds for services that were partially available.

62.     In the alternative, Plaintiff and the other Class Members are entitled to an equitable remedy-disgorgement of the pro-rated, unused amounts of Mandatory Fees that Defendant has already charged, and that Plaintiff and the other Class Members have paid.

63.     As a result of Defendant's breaches, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT II
### Breach of Implied Contract
### (On Behalf of The Class)

64.     Plaintiff hereby incorporate by reference the allegation contained in all preceding

paragraphs of this complaint.

65.     Plaintiff pleads this Count in the alternative to Count I.

66.     Plaintiff and the Class Members entered into an implied contract as to tuition and fees, wherein Plaintiff paid tuition and Mandatory Fees, and Defendant agreed to provide in-person and on-campus classes, access to facilities, and services.

67.     There is no single integrated document that reflects all of SU's covenants and promises as part of the student-university agreement.

68.     The covenants and promises required by the parties as part of that University-Student contract – namely those obligated by SU – were detailed and conveyed over the course of numerous documents and materials that were exchanged through the application, acceptance, enrollment, registration, and payment processes, including policy documents and standardized documents.

69.     Many of those documents are standardized or policy documents like acceptance letters, course catalogs, handbooks, bulletins, the enrollment acknowledgment, and other documents and materials, which conveyed the respective obligations of the parties, including the obligations on SU to provide on-campus education and services to students like Plaintiff.

70.     Students, like Plaintiff, also reviewed other documents, materials, and representations from SU reflecting the nature of the educational services and relied upon past experiences and past performance to form a reasonable expectation of the education and services they would receive.

71.     For example, the 2019-2020 Undergraduate Catalog contains numerous references to "campus" thereby reinforcing the foundational understanding that SU was a campus-based educational institution with access to in-person classes and a suite of on-campus and in-person

services, facilities, and activities, as well as the SU community.

72.     Visual images and representations of student life at SU conveyed these same foundational understandings, including images of campus, images of students working together, images of events and facilities, images of campus buildings, images of campus labs, images of campus-based technologies, and other similar visuals.

73.     In fact, undergraduate students like Plaintiff at SU are obligated to live on campus for two out of four years of undergraduate studies to create that community and allow SU to provide those services in-person.[32]

74.     In its Mission Statement, SU conveys part of its mission is to "foster a richly diverse and inclusive community of learning and opportunity" further stating that it "Maintain[s] pride in our location and history as a place of access, engagement, innovation, and impact."[33]

75.     These standardized documents and policies regularly reflected that SU would provide access to "campus," its "classrooms," "campus" facilities, "campus services," and other in-person, campus-based services, opportunities, and experiences.

76.     Students like Plaintiff that paid tuition and the Mandatory Fees reasonably expected to receive campus, community, and in-person access and classes when they enrolled at SU and registered for classes in the Spring 2020 semester.

77.     Before February 2020, Syracuse expected to and intended to provide on-campus, in-person educational services to enrolled students who paid tuition and fees.

78.     The parties' expectations were built around prior course of conduct and through critical contract formation stages: from recruitment to application, acceptance, admission,

---

[32] Housing For Year Students https://www.syracuse.edu/life/housing/first-year/#:~:text=Syracuse%20University%20requires%20incoming%20students,amount)%20within%20South%20Campus%20apartments. (Last Visited April 7, 2022).
[33] University Vision and Mission - https://www.syracuse.edu/about/vision-mission/ (Last Visited April 7, 2022).

18

enrollment, registration, and payment.

79.     The documents exchanged during these critical contract formation stages reflected "campus", images of campus, images of students on campus, references to tangible things on campus, references to buildings on campus, references to technologies on campus, and other references to students on campus.

80.     The covenants and promises of the student-university agreement were promised and conveyed to students like Plaintiff prior to February 2020.

81.     Plaintiff's expectations were based in substantial part on Syracuse's past performance and own marketing efforts highlighting the campus-based experience and personal interactions with faculty and staff as the reason to attend Syracuse.

82.     Plaintiff's expectations were based in substantial part on official policy documents and websites from Syracuse about its campus-based services.

83.     For example, the following provide a partial glimpse at the scope of Syracuse's representations and conveyance of the campus-based services it offers:

    a.  "Campus" is used 103 times in the 2019-2020 Tuition and Fees Booklet;

    b.  "Main Campus" is used 54 times in that same document in reference to the physical location associated with Syracuse;

    c.  The main image of that document reflects a prominent image of campus and several buildings and spaces on main campus;

    d.  Syracuse standard billing policies identify "Tuition – Main Campus", thus indicating that Tuition equates to access to "Main Campus"

    e.  In the "About Syracuse University" in the Course Catalog from 2019-2020, Syracuse states, "Students will learn from world-class teachers, assist in

critical research, collaborate across disciplines, and engage in the many-faceted intellectual, cultural, and social activities and events that comprise this vibrant campus community. In and out of the classroom, students will gain the knowledge …. Syracuse University's picturesque main campus reflects …[listing buildings and details about certain facilities]"

f.  The online version of the Course Catalog for 2019-2020 uses "Campus" on more than 50 occasions

g.  The PDF version of the 2019-2020 Undergraduate Course Catalog uses "Campus" 184 times

h.  Under "University Facilities", Syracuse represents and warrants that "Syracuse University students learn, study, and play among the 300 buildings on 900 acres that make up the campus. The University's 149-year history is reflected in buildings across campus …"

i.  Syracuse represents that is has provided access to campus to its students for over 125 years

j.  Plaintiff received access to campus and its services prior to March 2020 in all prior semesters of enrollment

k.  Social media and marketing materials mention campus, images of campus, images of students on campus, and image of facilities/services on campus

l.  Numerous other references to campus in documents distributed or published by Syracuse, its agents, or its staff

m. When Plaintiff selected classes for registration, Syracuse's documents, websites, and materials conveyed to him that the classes he selected and

registered for would be on-campus, live, and/or in-person, including by the specific building or location on campus

n.  Plaintiff generally recalls seeing numerous other references to buildings and facilities on campus during the class registration process throughout his enrollment at Syracuse

o.  When Plaintiff viewed his class schedule in the student portal his classes would be identified by campus buildings and/or room numbers.

84.  Documents like those referenced in this complaint reiterate the use of campus and community to convey the same implicit concept: SU offers its services in-person, on-campus, and face-to-face with other students.

85.  Under the implied contract, Plaintiff and the Class Members registered for on-campus, in-person courses and access to campus and its facilities.

86.  It was the reasonable expectations of Plaintiff and Class Members that Defendant would provide them with on-campus, as opposed to online, use of Defendant's facilities and services in accordance with Defendant's usual and customary practice of providing on-campus services, facilities, and experiences.

87.  SU has provided access to campus for over 150 years to its students, except for those enrolled during the Spring 2020 semester.

88.  Plaintiff and Class Members accepted and intended to use and enjoy Defendant's on-campus community, services, and facilities.

89.  Plaintiff and the Class Members have fulfilled all expectations by registering and paying for access to on-campus facilities and services.

90.  Plaintiff and the Class Members have paid Defendant for all Spring 2020 term

financial assessments.

91.     However, Defendant breached the implied contract, failed to provide those on-campus classes, services, experiences, and access, and have not otherwise performed as required by the implied-in-fact contract between Plaintiff and the Class Members and Defendant. Defendant moved all classes to online classes, restricted or eliminated Class Members' ability to access university facilities, and/or evicted Plaintiff and the Class Members from campus housing. In doing so, Defendant has deprived and continue to deprive Plaintiff and the Class Members from the benefit of their bargains with Defendant, and yet retains the monies paid for such benefits.

92.     Plaintiff and the Class Members have been damaged as a direct and proximate result of Defendant's breach. The online classes, services, and failure to provide campus access by Defendant are objectively different from, worse than, and less valuable than the on-campus classes for which the parties entered into an implied-in-fact contract.

93.     Plaintiff and the Class Members are entitled to damages, including but not limited to tuition and Mandatory Fee refunds.

## COUNT III
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

94.     Plaintiff hereby incorporate by reference the factual allegation paragraphs of this complaint.

95.     Plaintiff pleads this Count in the alternative to Counts I and II.

96.     By paying SU tuition and the Mandatory Fees for the Spring semester, SU agreed to, among other things, provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees they paid pertained throughout those affected semesters .

97.     SU has retained the benefits of the amount of tuition and fees that Plaintiff has provided – without providing the benefits that Plaintiff is owed.

98.     For example, SU failed to provide Plaintiff and Class Member access to any on-campus facility after middle of March, 2020. Yet SU assessed Plaintiff with tuition and fees that covered the cost of upkeep and maintenance of such facilities, services, costs, and expenses.

99.     Plaintiff was not able to access such facilities or services remotely.

100.    Plaintiff was unable to access campus or its facilities.

101.    Plaintiff paid tuition and fees with the expressed understanding that such costs included the in-person classes, services, opportunities, and experiences that SU have previously marketed, promoted, or made available prior to Covid-19.

102.    SU has been unjustly enriched by Plaintiff payment of tuition and fees.

103.    Despite not being able to provide such services, SU failed to provide reimbursements for tuition and fees dispute the diminished services it provided and the reduced benefits associated with the tuition and fees.

104.    Plaintiff and members of the putative Class have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

105.    It is unjust for SU to keep funds it charged and collected in advance for promised services SU ultimately did not render.

106.    Defendant was advantaged by the pandemic during the Spring 2020 semester because it kept all of Plaintiff and other students' tuition and fee payments but yet was only able to provide lesser value services, including online only instruction.

107.    The cost of providing online-only instruction was significantly less than campus based program.

108.    In fact, Defendant set tuition and fees such that it pays for a significant amount of campus-based services including buildings, technologies, labs, libraries, and other services for which there is no reasonable online equivalent.

109.    Defendant took in pre-paid tuition and fees, as well as government aid, and forced Plaintiff and his fellow students to shoulder the loss associated with the Spring 2020 semester and the pandemic.

110.    Plaintiff did not agree to shoulder the financial burden of the pandemic.

111.    Syracuse was in a better position to balance the equities of the financial consequences of the pandemic and ensure that students were not forced to incur the financial strain.

112.    Upon information and belief, Defendant took cost saving measures but failed to pass on those savings to Plaintiff and the class.

113.    Upon information and belief, Defendant earned considerable amounts of money through investments and their endowment but failed to pass on those earnings to Plaintiff and the class.

114.    Syracuse has been unjustly enriched to the detriment of Plaintiff as a result of the financial situations that occurred during the pandemic including during the Spring 2020 semester.

115.    Syracuse owes Plaintiff and putative class members in an amount to be determined under the appropriate case law including a partial refund of tuition and fees based on principles of equity, restitution, and other quasi-contract principles available under New York law.

## **PRAYER FOR RELIEF**

116.    WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and the Class against Defendant as follows:

(a)    For an order certifying the Class under Rule 23 and naming Plaintiff as

representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)     For compensatory and punitive damages in amounts to be determined by the Court;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For injunctive relief as pleaded or as the Court may deem proper; and

(g)     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit;

(h)     For an order awarding such other and further relief as may be just and proper, including injunctive relief and declaratory relief.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: December 15, 2023

Respectfully submitted,

 /s/ Michael A. Tompkins
**LEEDS BROWN LAW, P.C.**
Michael A. Tompkins, Esq.
Jeffrey K. Brown, Esq.
Anthony M. Alesandro, Esq.
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
mtompkins@leedsbrownlaw.com
jbrown@leedsbrownlaw.com

25

aalesandro@leedsbrownlaw.com

**LYNCH CARPENTER, LLP**
Gary F. Lynch, Esq.
Nicholas A. Colella, Esq.
1133 Penn Avenue
Pittsburgh, PA 15222
P. (412) 322-9243
F. (412) 231-0246
gary@lcllp.com
nickc@lcllp.com

*Counsel for Plaintiff and Proposed Class*